UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5:15-106-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LISA DAWN CROWE, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Lisa Dawn Crowe's motion to suppress the fruits of a search conducted pursuant to a warrant.   [Record No. 46] Additionally, Crowe has requested an evidentiary hearing on this issue.   [Record No. 46] The motion was referred to United States Magistrate Judge Robert E. Wier for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   On March 4, 2016, Magistrate Judge Wier issued his Recommended Disposition, recommending that this Court deny Crowe's motion to suppress and her request for an evidentiary hearing.   [Record No. 67] Thereafter, Crowe filed objections to the Recommended Disposition.[1]  [Record No. 72]

Having reviewed the record along with the Recommended Disposition, the Court concludes that the motion to suppress should be denied.  Further, the defendant has failed to meet her burden with respect to her request for an evidentiary hearing.  Accordingly, that request will also be denied.

---

[1]    Because Crowe filed objections to the Recommended Disposition, the Court will conduct a *de novo* review.  28 U.S.C. § 636(b)(1).

**I.**

In May of 2015, ATF Agent Robert Maynard, became involved in an investigation by local law enforcement of Crowe and her co-defendants.  [Record No. 46-2, p. 3]  On June 24, 2015, he swore to the affidavit at issue and attached it to an application for a search warrant.  [Record No. 46-2]  In the affidavit, Maynard states that he interviewed a confidential witness ("CW") in the course of the investigation.  The CW reported that he observed several firearms in Crowe's residence on Main Street in Mt. Sterling, Kentucky on two occasions, once in early May of 2015 and again on May 28, 2015.  *Id.*  The CW claimed that he also saw hundreds of oxycodone pills and a man that he believed to be Crowe's oxycodone supplier at the same address on May 29, 2015.  *Id.* at 3-4.

Additionally, the CW reported having several conversations regarding Crowe's drug trafficking involvement with Scotty Holder, who lived with Crowe at the time and is now one of her co-defendants.  *Id.* at 4.  As detailed in the affidavit, on several occasions, Holder and James Tyler Cundiff (another of Crowe's co-defendants) sold oxycodone pills to the CW in Crowe's house on Main Street.  *Id.* at 4-5.  On June 2, 2015, the CW and an undercover agent ("UC") met with Holder and Crowe at the Main Street address.  The UC bought fifty oxycodone pills from Holder while Crowe was in the bathroom.  *Id.* at 5.  That same day, law enforcement observed Crowe leave the house on Main Street in her white Mercedes.  They followed her to 2210 New Cut Road in Jeffersonville, Kentucky.  *Id.*  Law enforcement later determined that 2210 New Cut Road was not owned by Crowe.  *Id.* at 7.  However, the affidavit explains that she initiated electric service in her name at that property on May 22, 2015.  *Id.* at 8.

On June 9, 2015, Crowe told the CW that she and Holder were moving. *Id.* at 6. The same day, law enforcement observed a truck belonging to Coleman, the man who the CW identified as Crowe's dealer, leaving Crowe's Main Street residence. *Id.* Law enforcement followed the truck to the New Cut Road address. *Id.* Crowe was later observed heading in the same direction in her white Mercedes, and agents reported seeing a white car parked at the New Cut Road address later that day. *Id.*

On June 12, 2015, the UC and the CW made arrangements to buy 100 doses of oxycodone from Holder and Crowe. *Id.* According to the affidavit, Crowe met the UC and the CW at a Dairy Queen restaurant (the prearranged location), but told the UC she had to go back "to the house" to get the full amount of oxycodone. *Id.* at 7. Based on the amount of time that Crowe said she needed to return home, Maynard believed that Crowe returned to the New Cut Road address, instead of the Main Street address. *Id.* On June 16, 2015, Crowe sold the UC 100 does of oxycodone. *Id.*

The agent's affidavit also states that the CW recorded all of the reported drug transactions. *Id.* at 8. Maynard then reviewed all of the audio and video recordings and found them consistent with the accounts given by the CW and the UC. *Id.* Based on all of the information contained in the affidavit, Maynard stated that there was probable cause to believe that Crowe currently resided at 2210 New Cut Road. *Id.* at 7. Accordingly, Maynard requested a search warrant for the New Cut Road address and Crowe's Mercedes.

On June 24, 2015, Magistrate Judge Hanly A. Ingram issued the requested search warrant. [Record No. 46-3, p. 1] Crowe now seeks to suppress all the fruits of the resulting search. [Record No. 46]

## II.

Crowe contends that the application for the search warrant did not establish probable cause. *Id.* The Fourth Amendment of the United States Constitution only allows the issuance of warrants upon a showing of probable cause. U.S. Const. amend. IV. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). When determining whether probable cause exists for a warrant, an issuing magistrate must consider the totality of the circumstances. *United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2003). A reviewing court should pay great deference to the magistrate's probable cause determination. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The court will uphold the magistrate's decision if he had a "substantial basis" for concluding that probable cause existed. *Id.* Accordingly, the reviewing court considers the totality of the circumstances, rather than scrutinizing the warrant line-by-line. *Jackson*, 470 F.3d at 306.

In his Recommended Disposition, Magistrate Judge Wier found that Magistrate Judge Ingram had probable cause to issue the search warrant for 2210 New Cut Road and for Crowe's vehicle. [Record No. 67, p. 25] After reviewing the record, the undersigned agrees. Because Magistrate Judge Ingram properly issued the warrant, analysis of the parties' arguments regarding the good faith exception to the probable cause requirement is unnecessary.

## III.

Crowe argues that probable cause was lacking because: (i) some of the information contained in the affidavit was stale; (ii) the affidavit failed to establish a nexus between Crowe, drug trafficking activity, and the New Cut Road property; (iii) the affidavit failed to

-4-

establish that the information obtained from the CW was reliable; and (iv) Maynard omitted material information in preparing the affidavit.  [Record No. 46-1, pp. 1-2]

**A.      Staleness**

The affidavit indicates that the CW observed firearms in Crowe's house on May 28, 2015.  [Record No. 46-2, p. 3]  Because that information was nearly a month old at the time the warrant was issued, Crowe claims that the warrant was based on stale information.  [Record No. 46-1, p. 6]  "[A] warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location."  *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006).  In examining staleness claims, reviewing courts "consider the defendant's course of conduct, the nature and duration of the offense, the nature of the relevant evidence, and any corroboration of the information."  *Jackson*, 470 F.3d at 308.

In his Recommended Disposition, Magistrate Judge Wier explains that the one-month-old information was not stale because firearms "are of enduring utility [and] often persist in drug trafficking activities."  [Record No. 67, p. 13]  The Sixth Circuit has held that "[f]irearms are durable goods and might well be expected to remain in a criminal's possession for long periods of time."  *United States v. Goodwin*, 552 F. App'x 541, 545 (6th Cir. 2014) (internal quotation marks and citation omitted).  In *United States v. Lancaster*, 145 F. App'x 508, 513 (6th Cir. 2005), a case relied on by Magistrate Judge Wier, the Sixth Circuit held that information regarding possession of a machine gun was not stale even though it was obtained two years before the search warrant was issued.

Crowe acknowledges that "[t]he magistrate cites to cases in which staleness was not found based on greater time lengths."  [Record No. 72, p. 7]  But she argues that the firearm

sightings in her case were "irregular and isolated" and only based on the informant's reports. *Id.* She disregards Magistrate Judge Wier's finding that the informant's statements were sufficiently corroborated. Crowe also ignores the Recommended Disposition's discussion of the continuing nature of drug and firearm-related offenses.

On several occasions, Crowe relies on *Hammond*, 351 F.3d 765. In that case, the Sixth Circuit held that an informant's five-month-old tip regarding the location of drugs was not stale because drug trafficking is an ongoing offense. *Id.* at 771-72. Likewise, the Sixth Circuit has held that unlawful possession of a firearm is a "continuous and ongoing offense." *Goodwin*, 552 F. App'x at 544. Here, the affidavit presented evidence of firearm possession and an ongoing drug trafficking conspiracy, crimes that are both ongoing in nature and often interrelated, as explained more fully in the Recommended Disposition. [Record No. 67, pp. 14-15] For all of these reasons, Crowe's staleness claims fail. Regardless of the staleness issue, Magistrate Judge Wier correctly concluded that law enforcement could have searched for firearms as evidence of drug trafficking. *Id.* at 14.

### B.    Nexus

Crowe also claims that the affidavit failed to establish a sufficient nexus between herself, drug trafficking activity, and the New Cut Road address. [Record Nos. 46 and 72] To satisfy the probable cause requirement, "circumstances must indicate why evidence of illegal activity will be found in a particular place. In other words, there must be a nexus between the place to be searched and the evidence sought." *United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)).

Crowe argues that the affidavit does not sufficiently connect her to Cundiff's alleged drug trafficking activity.  [Record No. 72, p. 7]  But in making this argument, the defendant overlooks the fact that Cundiff sold drugs from her house on Main Street.  [Record No. 46-2, p. 5]  According to the affidavit, Cundiff was also present at the Main Street address with Crowe when Holder sold drugs to the UC and CW.  *Id.*  More importantly, the affidavit is replete with evidence connecting Crowe to drug trafficking activity.  Not only were drugs sold from her house on Main Street, she also sold oxycodone directly to the UC on at least two occasions.  *Id.* at 6-7.

Crowe's contention that the affidavit did not connect the New Cut Road address to drug activity is simply unfounded.  In his Recommended Disposition, Magistrate Judge Wier cites *United States v. Goward*, 188 F. App'x 355 (6th Cir. 2006) (per curiam), as a comparable case.  In *Goward*, the Sixth Circuit upheld a warrant authorizing a search of the defendant's residence even though the affidavit did not contain evidence of drug activity at that location.  *Id.* at 357-58.  The Court reasoned that "in the case of drug dealers, evidence is likely to be found where the dealers live."  *Id.* at 358-59 (quoting *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005)).

Crowe argues that the affidavit fails to "establish even probably that she had established residence" at the New Cut Road address.  [Record No. 72, p. 7]  According to the affidavit, surveillance evidence shows that Crowe went back and forth between the Main Street address and the New Cut Road property.  [Record No. 46-2]  Crowe refers to her trips back and forth as "inconsistencies."  [Record No. 72, pp. 2-3]  However, the Court agrees with the magistrate judge on this point:

> The information in the Affidavit shows an individual in the process of moving residences, shuffling between the two, and, in the interim, continuing to traffic drugs out of 214 Main. . . . [A]fter Crowe stated that she was moving, the Affidavit details no further 214 Main sighting of her.

[Record No. 67, p. 22]

If Crowe and Holder were relocating to New Cut Road, Crowe questions why they were not observed moving their belongings.  [Record No. 72, p. 3]  She also challenges Maynard's inference that she was living on New Cut Road when she met the UC and the CW at the Dairy Queen restaurant.  *Id.* at 3-4.  According to Crowe, she told the UC and the CW that she would return in forty-five minutes after going home *and* running a few errands.  *Id.* She maintains that this fact weighs against the magistrate judge's conclusion that she had relocated to New Cut Road.

In making these arguments, Crowe ignores the standard for probable cause.  An affidavit establishes probable cause where it demonstrates the *probability* of criminal activity.  *See Gates*, 462 U.S. at 235.  Certainty is not required.  *Id.* at 231.  As Magistrate Judge Wier observed, "the focus here is on whether there was probable cause, not definitive cause."  [Record No. 67, p. 21]  The affidavit contains sufficient facts to indicate that Crowe had probably relocated to New Cut Road.  Proof beyond a reasonable doubt that Crowe had moved was unnecessary.

### C.    Unreliable Informant

Crowe next maintains that the warrant was defective because the affidavit does not contain any representations that the CW is reliable or credible.  [Record No. 72, p. 5]  In her objections, Crowe states, "[w]hile the magistrate noted that certain video and audio tapes corroborated the informant's representations, there are material points in the affidavit that

-8-

rely solely on the informant's representations."  *Id.* at 2.  For example, the audio and video recordings do not confirm the CW's alleged firearm sightings.  *Id.*

Crowe has not provided any authority indicating that an affidavit must expressly state that an informant is reliable.  In fact, such a rule would undermine decisions like *Illinois v. Gates*, 462 U.S. 213, where first-time anonymous informants have been found reliable.  *See Jackson*, 470 F.3d at 307 (The Sixth Circuit found the informant was sufficiently reliable even though the affidavit did not expressly vouch for his credibility or reliability.)  A court may rely on an informant if his statements are substantially corroborated by independent police investigation.  *Id.*  The word "substantially" is key.  Not only were all of the informant's reported drug transactions recorded, but as the Recommended Disposition points out, the UC's consistent involvement further buttresses the Affidavit.  [Record No. 67, p. 10] As discussed above, the magistrate judge's probable cause determination did not hinge on the informant's alleged firearm sightings.  Even without the firearm evidence, the affidavit still justifies the search warrant.

### D.    Omission of Material Information

Crowe asserts that she is entitled to an evidentiary hearing because Maynard omitted material information from the affidavit.  [Record Nos. 46 and 72]  A defendant is entitled to an evidentiary hearing if he or she makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause."  *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  While material omissions may serve as the basis for a *Franks* hearing, the defendant must still make a "preliminary showing that the affiant engaged in 'deliberate falsehood' or 'reckless

-9-

disregard for the truth'" by omitting the information. *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997).

Crowe argues in her objections that Maynard improperly omitted information that Holder was addicted to drugs and not a reliable source. [Record No. 72, pp. 8-9] Crowe's argument plainly fails the second prong of *Franks*. Information regarding Crowe's drug use and reliability would not have affected the magistrate judge's probable cause determination. Even without his statements to the informant about Crowe's drug trafficking activities, the affidavit firmly establishes that drug sales regularly took place in Crowe's home and that she sold drugs directly to the UC. Accordingly, the undersigned agrees with the magistrate judge's determination that Crowe has not met her burden for an evidentiary hearing under *Franks*.

## IV.

For the reasons outlined above, it is hereby

**ORDERED** that:

1. The Recommended Disposition of Magistrate Judge Robert E. Wier [Record No. 67] is **ADOPTED** and **INCORPORATED** by reference.

2. Defendant Lisa Crowe's objections [Record No. 72] to the Magistrate Judge's Recommended Disposition are **OVERRULED**.

3. Defendant Lisa Crowe's motion to suppress [Record No. 46] is **DENIED**.

This 18th day of March, 2016.



Signed By:

_**Danny C. Reeves**_

**United States District Judge**