UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF KENTUCKY

CENTRAL DIVISION

(at Lexington)

Eastern District of Kentucky
**FILED**

APR 0 1 2020

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA,**

Plaintiff,

Case No. 5:15-106-DCR

v.

**LISA DAWN CROWE,**

Defendant.

_____/

# LISA DAWN CROWE'S MOTION TO RECONSIDER COMPASSIONATE RELEASE

COMES NOW Defendant Lisa Dawn Crowe ("Crowe"), proceeding in this matter pro se, and respectfully requests that the Court reconsider its Memorandum Opinion and Order of February 12, 2020, [ Dkt. No. 210], and grant the relief requested in her Motion for Compassionate Release [ Dkt. No. 200].

## I. THIS MOTION TO RECONSIDER IS APPROPRIATE AND AUTHORIZED BY THE COURT

(i) <u>Motion to Reconsider:</u>

Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them. "Motions to reconsider in criminal prosecutions

1

are proper." *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir.2010). The Supreme Court has recognized motions for reconsideration in criminal proceedings at least since *United States v. Healy*, 376 U.S. 75, 77–78, 84 S. Ct. 553, 11 L.Ed.2d 527 (1964). The Court has subsequently noted the "wisdom of giving district courts the opportunity promptly to correct their own alleged errors." *United States v. Dieter*, 429 U.S. 6, 8, 97 S. Ct. 18, 50 L.Ed.2d 8 (1976). Although the Supreme Court has only addressed motions to reconsider filed by the Government, courts have recognized that criminal defendants may also move for reconsideration. See *United States v. Miller,* 869 F.2d 1418, 1421 (10th Cir.1989).

A district court should have the opportunity to correct alleged errors in its dispositions. See *United States v. Dieter*, 429 U.S. 6, 8, 97 S. Ct. 18, 50 L.Ed.2d 8 (1976). A motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir.2000). Specific grounds include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id*. A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier. *Id.*

    (ii) <u>This Court Should Exercise its Discretion and Resentence Crowe to Time Served:</u>

In determining whether Crowe's sentence should be reduced, the Court must decide, inter alia, whether Crowe presents a danger to the safety of any other person or to any community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). If she does not, the Court looks to the factors outlined in 18 U.S.C. § 3553(a). As explained below, all these factors weigh strongly in favor of relief in Crowe's case.

2

Crowe is not a danger to the community. No violence was associated with any aspect of her offenses distributing small quantities of oxycodone. Crowe's lengthy sentence was not based in any way on the danger of her criminal conduct, or the need to incapacitate her, but instead was a result of a conspiracy to distribute oxycodone. The evolution of Crowe's character in the almost five (5) years of incarceration further exemplifies she is no danger. (See Att. A, Crowe letter to Judge Reeves).

The fact that Crowe will be an asset to her community is demonstrated by friends and family whose support has already been extended to her. (See Att. B, support letters).

Accordingly, this Court should welcome a motion to reconsider in this case to prevent "a manifest injustice", in light of new medical evidence previously unavailable and the impact of the deadly COVID-19 virus pandemic. https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

## II.  REASONS FOR MOTION AND RELEVANT BACKGROUND

Crowe has written this request for parties who are familiar with the facts, procedural history and the scope of the instant petition for Compassionate Release/Motion to Reconsider Compassionate Release. Thus, she will recount only those statements and facts necessary for this request. In support thereof, the following:

Recently, Crowe sought compassionate release from the custody of the Bureau of Prisons ("BOP"). The BOP denied Crowe's initial request for release, explaining she did not meet its terminal illness criteria. More specifically, its evaluation was that Crowe did not have indicators suggesting an end-of-life trajectory. Further, it was stated that Crowe is still independent with all

aspects of daily living. **The BOP explained, if treatment does not improve her condition, Crowe may submit a new request for compassionate release.**

Crowe disagreed with the BOP's determination and moved the Court for compassionate release based upon her diagnosis of terminal Stage IV breast cancer. [Dkt. No. 200]. Crowe previously had breast cancer that had been in remission since 2010.

While serving her term of incarceration, Crowe received emergency treatment due to breathing trouble in October 2019. The CT chest, abdomen and pelvis scan determined there were "probable metastatic deposits to the left pleural space, sternum, superior mediastinum and deep soft tissues adjacent to the left side of the superior mediastinum." Crowe underwent a CT scan on November 27, 2019, which confirmed she was suffering from metastatic disease. Finally, on January 17, 2020, following transfer to FMC Carswell, Dr. Prasanth Ganesa, oncologist, concluded that Crowe had Stage IV breast cancer and, while the disease was not curable, it was difficult to estimate her survival duration.

The United States opposed Crowe's motion for compassionate release. [Dkt. No. 203]. **It argued that the BOP cannot provide an accurate prognosis of life expectancy until it determines how Crowe responds to her current treatment regime. Accordingly, the United States believes that it is unclear whether her cancer will result in death. Additionally, the United States notes that Crowe is still independent with her daily living activities.**

The United States provided a letter from Dr. Charles Langham, the Clinical Medical Director of FMC Carswell, concluding that he was unable to determine a prognosis until he observes Crowe's response to her treatment regime that started in February 2020. [Dkt. No. 207-3] He explained that Crowe underwent a port placement and had her first dose of chemotherapy. The

4

letter outlines that a typical treatment response is determined after additional scans are taken 3 to 5 months after beginning chemotherapy. An MRI of her brain was negative, but a PET/CT scan was positive for metastasis (bone, liver, left mediastinal, and pleural). Dr. Langham also explained that Crowe is currently independent with activities of daily living.

Based upon the Government's opinion, put simply, this Court concluded that "while Crowe's deteriorating health condition mitigates some of the risk of danger, she still presents a danger to the community." [See, Memorandum Opinion and Order, page 6.].

**Update**:

Shortly after Crowe's denial of compassionate release, factors that could not have been foreseen by the Court at the time of its opinion came to light. Thus, Crowe did not have a full and fair opportunity to raise her claim—that is, the claim did not ripen—until after her denial and "new" medical tests reveal nodules inside her lungs have gotten bigger and that the cancer has spread to her neck since her CT Scan of January 30, 2020 and beginning treatment on February 3, 2020. (See Att. C, January 30, 202 CT Scan and February 24, 2020 BOP CT Scan report). She is continuing to struggle to breathe with fluid in her lungs. Crowe's former CHI Saint Joseph Health oncologist, Dr. Scott T. Pierce, M.D., wrote in a letter dated March 23, 2020, that "she appears to have recurrent cancer. Breast cancer when recurrent is terminal". (see Att. D, March 23, 2020 letter from Dr. Scott T. Pierce. M.D.).

More importantly, and complicating her health condition, there is the potential impact of the coronavirus on our "overcrowded" prisons. On March 13, 2020, President Trump declared a state of emergency concerning the novel coronavirus disease (COVID-19) outbreak. A Bipartisan group of Senators have already expressed serious concern for the health and wellbeing of inmates (like Crowe) who are most vulnerable to infection, and they urge the BOP to take

5

necessary steps to protect them, particularly by using existing authorities under the First Step Act of 2018. https://sentencing.typepad.com/sentencing_law_and_policy/2020/03/bipartisan-group-of-senators-write-to-doj-and-bop-to-urge-taking-necessary-steps-to-protect-most-vul.html And, a March 26, 2020 memorandum from Attorney General William Barr directed the BOP to begin identifying individuals (like Crowe) for transfer to home confinement. https://www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000

Furthermore, the Center for Disease Control and Prevention has issued guidance indicating that adults over 60 years old and individuals with chronic medical conditions, such as lung disease, heart disease, and diabetes, are at a higher risk of contracting COVID-19 and suffering more severe illness and death. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html In short, there is the potential impact of the coronavirus on our highly populated prisons. Crowe is living in an environment where "social distancing" cannot be achieved. Already one FMC Carswell employee (T. Whitehead) has self-identified as having COVID-19 and is self-quarantined but untested due to his doctor's choice. https://www.fox4news.com/news/fort-worth-man-concerned-after-not-being-tested-for-covid-19-even-though-doctor-suspected-he-had-it These deficiencies, inhumane in and of themselves, now represent a real medical, life- threatening event to Crowe. Take these facts together, with the latest life-expectancy diagnosis her new BOP doctor, Dr. Lorenzi at FMC Carswell has given to her, which is a life expectancy of less than 12 months. Additionally, Crowe is no longer independent with any activities of daily living. She is physically frail and does not have the ability to fend for herself as her motor skills have deteriorated. She is on oxygen and cannot get around on her own. She only uses a wheelchair with a person "pusher" and needs assistance with showering and all other daily activities. Crowe often experiences uncontrolled diarrhea, soiling

her clothes and bedding and requiring pull-ups, rationed by the BOP; and she experiences chronic pain even with medication. She is being housed in a Federal prison without adequate medical staff, without proper medical equipment, sterilization techniques, gloves, masks, sanitizers and other necessary items. (See Att. E, Crowe and Arsons affidavits).

These considerations weigh in favor of finding that Crowe poses no danger to the safety of any person or of the community.

### III. EMERGENCY MOTION

Crowe respectfully requests this Honorable Court accelerate and expedite these proceedings. The normal schedule for resolution of the matter before this Court will result in an untimely resolution of the matter and cause irreparable harm to Crowe in this case as it appears that Crowe is entitled to immediate release.

### IV. MOTION PAPERS

This Motion is based on facts and authority within this document, on the supporting Motion to expedite proceedings referred to below, all of the pleadings and papers on file in this action, and whatever evidence may be provided at an evidentiary hearing before the Court on this Motion.

### V. SUMMARY ARGUMENT

In appropriate cases, such as when there is an urgent need to resolve the appeal quickly to prevent harm, a party may file a motion to expedite the appeal as an emergency motion. Expedited delivery of an opinion on this matter would be in the interest of justice. Because the facts in this case are undisputed, and there is no need for any finding of facts, urgent resolution of this matter is required if the relief sought in this action is to have meaning. Under the facts of this case, Crowe is eligible for a sentence of time served. Courts have granted a sentence of time

served under similar circumstances as Crowe's case. See *United States v. Clarke*, No. 4:92-cr-4013-WS/CAS, (N.D. Fl. Oct. 24, 2019) (granting motion for reconsideration); *United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, (S.D. Ind. May 9, 2019) (granting renewed motion for compassionate release, with conditions); *United States v. O'Bryan*, No. 96-10076-03-JTM, (D. Kan. Feb. 21, 2020) (granting motion for reconsideration); and *United States v. Gutierrez*, No. 05-cr-217-RB (D. Mex. April 4, 2019).

## VI.   DISCUSSION

Crowe asks the Court to reduce her currently imposed sentence and order that she be released on conditions to her fiancé's home at 1045 Lucille Drive, Lexington, K.Y. 40511. Mr. Russell McFarland will serve as Crowe's principal caregiver. Mr. McFarland was released from probation on February 5, 2020. (See Att. F, R. McFarland Early Termination of Supervised Release).

The BOP's new reports support a finding that Crowe "suffer[s] from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 application note (1)(A)(ii)(I). Neither party can contest these medical records and must conclude that Crowe suffers from "chronic and serious" conditions. That the conditions are chronic indicates that Crowe is not expected to recover from her conditions.

Application Notes. Note (1)(A)(ii) does not require that Crowe be unable to function in a correctional facility. Rather, it requires that she have a substantially diminished ability to provide self-care within the correctional facility environment.

Today, Crowe has to struggle to breathe with fluid in her lungs; she is using oxygen to help her breathe; she is fully dependent on an inmate companion to assist her with activities of daily living and a wheelchair. Taken all together, this Court should find that Crowe's chronic, serious conditions, including those that are mitigated when properly treated by medical professionals, demonstrate a substantially diminished ability to provide self-care from which she is not expected to recover. Extraordinary and compelling reasons therefore support a reduction in sentence.

    (i)    Relevant Facts:

After the denial of Crowe's request for compassionate release on February 12, 2020, her medical records became ripe for relief under the First Step Act of 2018.

On March 5, 2020, Crowe was seen by physical therapist Joshua B. Caulder, PT, DPT, due to her inability to self-ambulate and provide self-care. As a result of this examination by Mr. Caulder, and on that same day Crowe was admitted to the impatient section (palliative care) of the prison. (See Att. G, BOP Medical Duty Status reports (3 of them) dated, 2/21/2020, 2/21/2020, and 3/5/2020).

Crowe formerly used a cane to assist her in short walks. Today, she is confined to a wheelchair for all movement from point A to point B. And her housing and support needs have changed. Handicap shower (w/bench), Reacher, Pillow (extra), Bedside Commode, Hospital Bed, Cushions, Bed Pads, Pull Ups, Eyeglasses, Nebulizer, Wheelchair (w/Detachable Leg Rest). Oxygen wall access available as of March 26, 2020. Crowe uses oxygen throughout the day and sleeps with it at night. In addition, Crowe is losing bowel and bladder control; and undergoing

9

chemotherapy has caused her voice to change in addition to diagnosed cancer growth in her throat.

Crowe's three meals a day are delivered to her bedside. She is given a shower while sitting on a shower chair by the inmate nurse's assistant and dressed by them as well if she has the energy to get up.

Crowe's breathing condition has greatly worsened to the point her oxygen level drops precipitously. She cannot breathe in order to speak because her oxygen level drops so low, her lips and hands go numb, she loses control of her bodily functions and she cannot hold her head up. She now has ready access to oxygen via a wall outlet and has to force air into her lungs and do breathing treatments to help raise her oxygen levels. She was provided a Reacher, because she is unable to bend over at all.

Another PET Scan was performed on January 30, 2020, which showed numerous new areas with cancer that were not seen on the PET Scan from November 27, 2019. Some of these areas include the right hepatic lobe, the lateral right inferior pubic rami as well as the right ischial tuberosity, left iliac bone, left sacrum, L4 vertebral body and right glenoid. Crowe has bruises all over her body which she was told are likely a result of cancer being in her blood stream after invading the mediastinum.

These facts are supported by the BOP's records (new evidence previously unavailable). (See Att. H, BOP Medical Records).

Finally, this Honorable Court should expand the "extraordinary and compelling reasons" in the First Step Act of 2018 to include vulnerability to COVID-19 within prisons. Because social distancing is not possible in correctional facilities health officials have been warning for more

than a decade about the dangers of outbreaks of infectious diseases in jails and prisons, which are ideal environments for viruses to spread to inmates who share small cells with total strangers, use toilets just a few feet from their beds, and are herded into day rooms where they spend hours at a time together.

On March 13, 2020, the Bureau of Prisons temporarily halted visitation for at least thirty (30) days at all 122 federal correctional facilities across the U.S., including both social and legal visitation. https://www.bop.gov/resources/news/20200313_covid-19.jsp

The First Step Act expanded sentencing courts' discretion to reduce sentences based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). The COVID-19 pandemic unquestionably constitutes "extraordinary and compelling reasons." Centers for Disease Control and Prevention has identified persons with respiratory problems, and compromised immune systems as facing special danger from COVID-19, both medical conditions Crowe has been diagnosed with having. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html

This Honorable Court should respond to this national emergency by amending its prior judgement on compassionate release to specifically include consideration of those individuals (like Crowe) in prison whose health are most at risk with this pandemic. The United States Sentencing Commission's examples of extraordinary and compelling reasons in the commentary to the compassionate release guideline recognizes BOP's continued authority to recommend a reduction in sentence based on factors other than those already identified. U.S.S.G. § 1B1.13, comment n.1(D) by informally amending its compassionate release program statement on an emergency basis.

11

See First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5194, 5238 (2018); see also Fed. Bureau of Prisons, Operations Memorandum: 001-2019, Home Confinement under the First Step Act (Apr. 4, 2019). See Centers of Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19) *People who are at higher risk for severe illness.* (March 12, 2020), https://bit.ly/2vgUt1P

See Fed. Bureau of Prisons, Program Statement 5050.50: Compassionate Release/Reduction in Sentence. Procedures for consideration of reduced sentences for those who are particularly susceptible to COVID-19, with the sentencing judge making the ultimate decision on whether to grant a reduction. This simple yet significant policy change would make it easier for courts to remove vulnerable inmates from prison while at the same time making prisons safer by lowering the inmate population.

This change would be most effective if BOP used the same mechanisms for publicity and assistance in contacting counsel for terminal conditions to identify and notify individuals who are particularly vulnerable to complications from COVID-19. BOP should address compassionate release requests from these individuals on an expedited basis with a presumption in favor of release to supervision in the community. In 2019, BOP took an average of 39 days to determine whether to file a Reduction in Sentence motion under 18 U.S.C. § 3582(c)(1)(A) for terminally ill prisoners and 58 days for debilitated prisoners. That year, 41 people died waiting for action on their request. These delays must be cut dramatically if vulnerable prisoners are to be protected during an outbreak.

The COVID-19 pandemic creates heightened risks for detained individuals and the greater community that must and can be addressed immediately. Being in a prison, Crowe is limited to the treatment and medicine options available, limited to the proper nutrients for a cancer patient

12

undergoing chemotherapy (severe burning of the skin), and limited to individualized medical care. Being at home will allow her a chance to live in the comfort of her home with her loved ones.

To be clear, Crowe is dying a slow and agonizing death, the cancer is literally eating her alive. Her (biological) sister Tina Powell Lawson was resident at FMC Carswell when Crowe arrived from FPC Alderson on January 8, 2020. Lawson writes in her affidavit that she could not even recognize her own sister (Crowe). "She had lost so much weight and was so frail it was heartbreaking." (See Att. I, Tina Powell Lawson affidavit).

At the end of the day, Crowe's son doesn't know the true extent of her medical condition. Crowe is struggling with telling him or not telling him. She doesn't want him dealing with this alone, being powerless, wanting to see his mother and be with her, wanting to take care of her. Clearly, he is entitled to a proper goodbye, which could have a big impact on his life.

Crowe prays for compassion and mercy and asks to be allowed to go home to her son and family so that she can spend time with them.

If necessary and needed to determine her true and actual medical condition and life expectancy Crowe can testify on her own behalf and call others (i.e., expert medical witnesses, family and friends, and BOP staff) to testify in support of the instant petition for reconsideration for compassionate release. The recently signed CARE Act provides for this Video Court Hearings. https://famm.org/wp-content/uploads/2020-CARES-Act-Barr-Memo-Summary.docx.pdf

    (ii)    <u>Crowe is no Danger:</u>

Crowe is not a danger to the community. No violence was associated with any aspect of her offenses distributing small quantities of oxycodone. Crowe's lengthy sentence was not based in

13

any way on the danger of her criminal conduct, or the need to incapacitate her, but instead was a result of a conspiracy to distribute oxycodone. The evolution of Crowe's character in the almost five (5) years of incarceration further exemplifies she is no danger. (See BOP records). The fact that Crowe will be an asset to her community is demonstrated by family and friends whose support has already been extended to her.

        (iii)     Personal Statement:

To be clear, Crowe makes no excuses for her unlawful conduct stated above and supported by her guilty plea and accepts full responsibility for her wrongful actions. Nothing submitted by or on behalf of Crowe is intended to diminish or detract from the seriousness of her offense, her complete and unconditional acceptance of responsibility or regret for her unlawful actions. Crowe's acceptance of responsibility, as well as her deep sense of remorse, is unqualified. In fact, the evidence stated herein is not being offered to challenge her conviction or sentence but instead to provide this Honorable Court with a greater context in which to assess the factors which warrants a reduction of her sentence of "time served".

        (iv)     Extraordinary and Compelling Facts:

The extraordinary and compelling factors stated herein warrant a reduction in the sentence in Crowe's case to "time served". Why? Crowe is physically frail (decrepit, unable to breathe normally and weak from cancer and treatment) and has lost her ability to fend for herself in a prison environment, as her motor skills have deteriorated.

These considerations and others stated herein weigh in favor of finding that Crowe poses no danger to the safety of any person or of the community if her motion is granted.

        (v)     Release Plan:

Crowe requests that the court reduce her sentence to time served and place her on supervised release so she can live her remaining days at home with her fiancé and surrounded by her local family members, including her son. Her extended family members are willing and able to assist Crowe in the transition she will be making once she is released from prison. They are in the position to provide Crowe with daily support she will need to receive medical treatment and conduct daily living activities. In addition, family members have agreed to help Crowe obtain transportation, health insurance, and all other needs to smoothly transition back into the community and with her family, for her last days on this earth, instead of being a tax burden on the Government.

      (vi)     <u>Renewed Request for Hearing and Request to Appear via Video and Telephonically:</u>

Crowe renews her request for a hearing on her motion for compassionate release. While Crowe's presence is not required under Rule 43(b) of the Federal Rules of Criminal Procedure, she requests a hearing on her motion and she would appreciate the opportunity to show the impact that cancer has had on her life, to further develop the section 3553(a) factors. The recently passed CARE Act provides for this Video Telephonic opportunity to address the Court.
https://famm.org/wp-content/uploads/2020-CARES-Act-Barr-Memo-Summary.docx.pdf

## VII. CONCLUSION

In the instant motion Crowe asks this Court to weigh in on the BOP's determination of what constitutes extraordinary or compelling circumstances warranting the filing of a motion for reduction in sentence. https://www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000

Specifically, Crowe asks the Court for a determination that her condition has worsened to such a degree that it is, in effect, a new and different condition (and she is particularly vulnerable to the

15

deadly COVID-19 virus) which was not foreseeable at the time of the judgement under reconsideration in this matter. Thus, the instant request should be granted to prevent manifest injustice.

Respectfully Submitted,

/s/ _Deargan E. Arms_ *signed with permission and on behalf of Lisa D. Crowe. Original signature to follow.*
Lisa Dawn Crowe
Reg. No. 19451-032
FMC Carswell
P.O. Box 27137
Fort Worth, TX 76127

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on _March 30_, 2020 the foregoing MOTION TO RECONSIDER COMPASSIONATE RELEASE PETITION was served upon the U.S. Attorney for the EASTERN DISTRICT OF KENTUCKY CENTRAL DIVISION via U.S. mail and pre-paid mail.

/s/ _Deargan E. Arms_ *signed with permission and on behalf of Lisa D. Crowe. Original signature to follow.*
Lisa Dawn Crowe

1566 Ocean Avenue, Unit #6
Sea Bright, New Jersey 07760
March 30, 2020

To Whom It May Concern:

Eastern District of Kentucky
FILED
APR 01 2020
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

RE: **Lisa Dawn Crowe, Case No. 5:15-106-DCR**

My name is Georgean E. Arsons, and I am a trained paralegal.

I do swear or declare that on this date, March 30, 2020, as required by the rules of this Court, I have served the enclosed Petition for reconsideration on the Clerk of the Court in the Eastern District of Kentucky and all parties involved in this action by depositing envelopes containing the documents in the United States mail properly addressed and with first-class postage prepaid. This action is being taken with the consent of, and on behalf, of the Petitioner stated in the above stated case (Case No. 5:15-106-DCR).

I declare under penalty of perjury that the foregoing is true and correct.

/s/ _Georgean E. Arsons_
Georgean E. Arsons

1566 Ocean Avenue, Unit #6
Sea Bright, New Jersey 07760
Home # 732 758 8168
Email: ggarons@verizon.net